## YALE & TOWNE MFG. CO. v. ALDER.

### (Circuit Court, E. D. New York.  December 17, 1906.)

TRADE-MARKS AND TRADE-NAMES—UNFAIR COMPETITION—IMITATION OF LOCKS.

Complainant manufactured a padlock having a brass colored shackle and in a depressed panel on one side the word "Yale" in large letters and on the other side in another panel a trefoil symbol.  Defendant, who was also a manufacturer of locks, copied the exterior form and appearance of complainant's lock for a mechanism of his own; the two being generally similar in appearance, except that defendant's had the word "Yap" in one panel, and a keystone on the reverse side.  Each contained the name of the maker in small letters on the shackle and the boxes in which they were sold to dealers, each containing a half dozen locks, were dissimilar in appearance. *Held*, that the resemblances were not such as were calculated to deceive ordinarily intelligent purchasers, and that, in the absence of proof of such actual deception, defendant was not chargeable with unfair competition.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trade-Marks and Trade-Names, § 81.

Unfair competition, see note to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.]

In Equity.  On final hearing.

Wetmore & Jenner (Edmund Wetmore, William A. Redding, and Oscar W. Jeffery, of counsel), for complainant.

Bartlett, Brownell & Mitchell (Robert C. Mitchell, of counsel), for defendant.

THOMAS, District Judge.  The facts in this case are simple.  The complainant, Yale & Towne Manufacturing Company, of Stamford, Conn., is, and has been for many years, one of the largest manufacturers of locks in the country, and in 1891 put on the market the lock claimed to have been so closely copied by Edward T. Fraim as to constitute unfair competition.  The bill is filed against Fraim, and one Alder, a dealer in such locks, but the issue is practically between the complainant and Fraim.  The latter is a well-known manufacturer of locks at Lancaster, Pa., and is the owner of the Keystone Lock Works.

Complainant's lock is a collocation of well-known forms of parts, brought into new assemblage, and colored a dull black, save the shackle, which with its seats is apparently brass.  The place where the key is inserted shows a small circular area of similar color.  In 1904 Fraim saw this lock, and having a lock of alleged new invention, he regarded it as suited to his mechanism, as it was, although not indispensable to it.  Therefore he copied the exterior form and appearance, so that the difference would not be noted save upon a careful scrutiny, except in three particulars, two of which are significant and obvious.  The complainant's lock bears in the depressed panel the word "Yale"; Fraim's lock bears in a similar panel the word "Yap."  The complainant's shackle bears the words, in small letters, "Yale & Towne Mfg. Co.," on one side, and "Stamford, Conn., U. S. A.," on the other.  The Fraim lock bears on one side of the shackle, in similarly small letters, "E. T. Fraim, Lancaster, Pa.," and

nothing save an "x" and the figure "1" on the other side of the shackle. The Yale lock has in a depressed panel on the reverse side a trefoil symbol, while in a similar position on the Fraim lock is a "keystone," Fraim's trade-mark. The paper boxes in which the locks are sold to dealers by the complainant and by Fraim differ in size, color, and construction. Complainant's box has on its top this label:

Ironsides Padlock.

To Salesmen: In making sales of this padlock call the attention of the customer to the fact that it is most easily opened by pulling on the shackle, and not by pushing on the key.

On the end of the box is this:

½ Doz. 805 2 in.
Yale
Padlocks
Finish—Bower Barff.
The Yale & Towne Mfg. Co. Stamford, Conn., U. S. A.

The Fraim box shows only this on its end:

½ Doz. 2 In. No. 815.
Yap
Padlocks
Two Solid German Silver Keys.
Manufactured by
E. T. Fraim, Lancaster, Pa., U. S. A.

It is certain that no dealer could be confused or misled, even in view of the fact that the defendant in his catalogue shows only the front of his lock, and not the keystone. But would an ordinary purchaser be misled? Some dealers, as witnesses, disclaiming that dealers would be confused, give their opinion that purchasers would be. But not an instance of such confusion is shown. Of course customers might ask for a Yale lock and be given a Yap lock, and not notice the substitution. That might be said of innumerable articles purchased over counters, when each article was legitimate in mark and form. But if a man who wanted a "Yale" lock should take in its place a "Yap" lock, it would indicate that he could not read a word written in three capital letters, or that he did not care enough what he got to try to read, and to this must be added the presumption that the hardware vendor would be too dishonest to trust, and that he would try to substitute and palm off on his customers a lock that showed in large letters that it was not the lock asked for. Now, the hardware dealers are intelligent and usually honorable, and people who have something to lock up are, as a rule, neither illiterate nor absolutely inattentive to their purchases, and it is a very violent assumption that such class of customers would ask for a Yale lock, and walk off with one labeled "Yap." This matter of careless buying may be carried so far as to underestimate ordinary intelligence. A purchaser may not carefully scrutinize certain purchases, but there are conditions so staring and obvious that he could not help seeing them unless he shut his eyes and kept them shut. Neither would a retail purchaser know about the number of locks, whether it was "805," or "815," or

any other number. The number is not on the lock itself, and the box is intended to hold one-half dozen.

The real fact is that the complainant had a form of lock that appealed to the defendant, and he thought it would dress up his lock and make it sell well. As it was suited to his mechanism, and perhaps had some economies in manufacture, he took it. He was not sensitive about availing himself of another's taste and conception of attractiveness in trade. The complainant, in its imitation of the locks of other people, had illustrated that in such matters it was untroubled by any refined sense of obligation beyond keeping within the law. But the complainant had no monopoly of form or color. That is to be obtained by patent. That it does not claim. But it claims that "Yap" is so much like "Yale" that, in connection with form and color, it constitutes unfair competition. That is a matter of judgment. But it is considered that it has the opposite effect, and that the word "Yap" boldly differentiates both to the eye and ear. Of course, if it be regarded that the trade is in the hands of knaves, and that the customers are grossly ignorant or negligent, and that upon a given purchase the vendor would unite his fraud to a purchaser's illiteracy or inexcusable carelessness, probably the Fraim lock could be sold in fraud of complainant. But ordinary respect for human honesty and intelligence precludes the hypothesis on which such a conclusion must be predicated. Fraim's conduct does not commend him to admiration, but he has kept within the law.

The bill should be dismissed.